# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KM-01647-COA

STEPHEN NOLAN A/K/A STEPHAN NOLAN
A/K/A STEPHEN R. NOLAN A/K/A STEPHEN
RAYMOND NOLAN

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP |
| | JARED KEITH TOMLINSON |
| ATTORNEY FOR APPELLEE: | BOTY MCDONALD |
| CITY PROSECUTOR: | BOTY MCDONALD |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| TRIAL COURT DISPOSITION: | CONVICTED OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, FINED $900, AND SENTENCED TO FORTY-EIGHT HOURS IN THE CUSTODY OF THE MADISON COUNTY SHERIFF'S DEPARTMENT, WITH THE SENTENCE SUSPENDED UPON THE CONDITION THAT APPELLANT COMPLETE THE MISSISSIPPI ALCOHOL SAFETY EDUCATION PROGRAM, OR THE EQUIVALENT IN APPELLANT'S PLACE OF RESIDENCE IN ONTARIO, CANADA, AND TWO YEARS OF UNSUPERVISED PROBATION; CONVICTED OF FOLLOWING TOO CLOSELY AND FINED $50 |
| DISPOSITION: | AFFIRMED - 01/12/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND JAMES, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     Stephen Nolan appeals his convictions of driving under the influence (DUI), first offense, and following too closely (tailgating). Nolan argues: the verdicts were against the weight and sufficiency of the evidence; the trial court improperly considered his refusal to submit to the Intoxilyzer 8000 test as evidence of guilt; and the tailgating statute, Mississippi Code Annotated section 63-3-619 (Rev. 2013), is unconstitutionally vague. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 20, 2013, at approximately 1:56 a.m., Officer Ryan Ainsworth observed Nolan's vehicle traveling at an unsafe distance behind another vehicle on Rice Road in Ridgeland, Mississippi. Nolan's vehicle then swerved, and his passenger-side tires struck the fog line on the right side of the road. Officer Ainsworth followed Nolan as he drove west down Rice Road and as he turned left onto Old Canton Road. Observing that Nolan was still tailgating the vehicle in front of him, Officer Ainsworth conducted a traffic stop.

¶3.     Officer Ainsworth asked Nolan if he knew the driver of the car in front of him, and Nolan said he did. During their conversation, Officer Ainsworth smelled an "overwhelming" odor of alcohol coming from Nolan's vehicle, and he noticed Nolan appeared lethargic and had bloodshot, glassy eyes. Nolan admitted he had drunk two twelve-ounce beers between approximately 10 and 10:30 p.m. Officer Ainsworth smelled alcohol on Nolan's breath, and a preliminary breath test indicated the presence of alcohol. Officer Ainsworth then conducted the horizontal-gaze-nystagmus test, from which he observed six of six clues. He

then conducted a series of field sobriety tests. Officer Ainsworth observed five of eight clues on the walk-and-turn test. On the one-leg-stand test, Officer Ainsworth observed three of four clues. Nolan was arrested and taken to the Ridgeland Police Department. He refused the Intoxilyer 8000. The traffic stop was videoed by Officer Ainsworth's dash camera.

¶4. On July 30, 2013, Nolan entered a no-contest plea in Ridgeland Municipal Court to DUI, first offense, and tailgating. He was found guilty. He appealed to county court. A bench trial was held, and he was again found guilty. On the DUI conviction, Nolan was fined $900 and sentenced to serve forty-eight hours in the custody of the Madison County Sheriff's Department. The sentence was suspended pending Nolan's completion of the next available Mississippi Alcohol Safety Education Program or an equivalent program in his place of residence in Ontario, Canada, and two years of unsupervised probation. On the tailgating conviction, he was fined $50. He appealed to Madison County Circuit Court, where his convictions and sentences were affirmed.

¶5. Nolan raises five issues on appeal to this Court: (1) the evidence was insufficient to support the DUI conviction; (2) the trial court judge improperly considered his refusal to submit to the Intoxilyzer 8000 as evidence of guilt; (3) there was no reasonable suspicion or probable cause for the traffic stop; (4) the verdicts were against the overwhelming weight of the evidence; and (5) the tailgating statute, section 63-3-619, is unconstitutionally vague.

**DISCUSSION**

¶6. As is common with appeals from the City of Ridgeland, City Prosecutor Boty

3

McDonald has failed to file an appellee's brief.[1] "An appellee's failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed." *Clack v. City of Ridgeland*, 139 So. 3d 778, 781 (¶17) (Miss. Ct. App. 2014) (quoting *Chatman v. State*, 761 So. 2d 851, 854 (¶9) (Miss. 2000)). We find this case can be confidently affirmed.

## I. Sufficiency of the Evidence Supporting the DUI Conviction

¶7. A challenge to the sufficiency of the evidence requires this Court to determine whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). The evidence will be deemed insufficient to support the verdict where "the facts and inferences . . . point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty[.]" *Id.* The evidence is viewed in the light most favorable to the State. *Id.*

¶8. Nolan was convicted of common-law DUI under Mississippi Code Annotated section 63-11-30(1)(a) (Supp. 2015). This statute provides that "[i]t is unlawful for a person to drive

---

[1] *See Robinette v. State*, 2014-KM-01649-COA, 2015 WL 7253246, at *5 (¶17) (Miss. Ct. App. Nov. 17, 2015); *Cameron v. State*, 175 So. 3d 574, 577 n.2 (Miss. Ct. App. 2015); *Woods v. State*, 175 So. 3d 579, 580 (¶9) (Miss. Ct. App. 2015); *Clack v. City of Ridgeland*, 139 So. 3d 778, 778 (¶1) (Miss. Ct. App. 2014); *Carlson v. City of Ridgeland*, 131 So. 3d 1220, 1222 (¶8) (Miss. Ct. App. 2013); *Lobo v. City of Ridgeland*, 135 So. 3d 148, 152 (¶12) (Miss. Ct. App. 2013); *Drabicki v. City of Ridgeland*, 130 So. 3d 113, 118 (¶19) (Miss. Ct. App. 2013).

or otherwise operate a vehicle within this state if the person . . . [i]s under the influence of intoxicating liquor." *Id.* "Common[-]law DUI is proven when a defendant's blood[-]alcohol results are unavailable but there is sufficient evidence to [show] that the defendant operated a motor vehicle under circumstances indicating his ability to operate the vehicle was impaired by the consumption of alcohol." *Young v. State*, 119 So. 3d 309, 315 (¶19) (Miss. 2013) (quoting *Gilpatrick v. State*, 991 So. 2d 130, 133 (¶18) (Miss. 2008)).

¶9. Officer Ainsworth testified that Nolan's vehicle caught his attention because it was traveling too closely to the vehicle in front of it. Officer Ainsworth then observed Nolan's vehicle swerve into the right fog line. After Nolan's vehicle continued to travel unsafely close to the vehicle in front of it, Officer Ainsworth conducted a traffic stop. Officer Ainsworth smelled the "overwhelming" presence of alcohol coming from Nolan's vehicle and on Nolan's breath. Nolan appeared lethargic and had glassy, bloodshot eyes. He admitted to drinking earlier that night. During the walk-and-turn test, Officer Ainsworth observed five of eight clues. Nolan was unable to walk heel-to-toe consistently, was unable to turn properly, had to use his arms for balance, was unable to maintain balance during instructions, and began the test too soon. During the one-leg-stand test, Officer Ainsworth observed three of four clues. Nolan put his foot down for balance, swayed while on one leg, and used his arms for balance. Finally, Nolan refused the Intoxilyer 8000.

¶10. In addition to Officer Ainsworth's testimony, the dash-camera footage was introduced into evidence. The judge stated that he watched the video multiple times before making his decision. The judge found Officer Ainsworth's testimony credible and consistent with the

5

video.

¶11.    Nolan argues that this Court should not focus on the foregoing evidence, but rather the lack of evidence that his ability to operate his vehicle was diminished.  Specifically, Nolan argues that the State failed to prove intoxication because there was no evidence his "normal ability for clarity and control" was lessened.  *See Leuer v. City of Flowood*, 744 So. 2d 266, 269 (¶11) (Miss. 1999) (citing *Gov't of Virgin Islands v. Steven*, 134 F.3d 526, 528 (3rd Cir. 1998)).  He relies on Officer Ainsworth's testimony that at no other time than during the field sobriety tests did Nolan exhibit balance problems and that at no point was his speech slurred.  Also, Nolan points out that he had no problem safely stopping or exiting his vehicle and that he was cooperative throughout the traffic stop and arrest.

¶12.    We point out, however, that when reviewing a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the State.  As such, we find Nolan's assertions without merit.  In *Saucier v. City of Poplarville*, 858 So. 2d 933, 936 (¶¶16-17) (Miss. Ct. App. 2003), this Court upheld a finding of intoxication for common-law DUI where the defendant smelled of alcohol, had glazed eyes and slurred speech, and failed to perform the field sobriety tests adequately.  Likewise, we find the evidence here sufficient to support a finding of intoxication.  Although Nolan's speech was not slurred, Nolan admitted to drinking, smelled of alcohol, had glassy, bloodshot eyes, and failed to perform the field sobriety tests adequately.  Further, Nolan inconsistently testified regarding the amount he drank before the traffic stop.  First he stated he had a "few beers," then on cross-examination he stated he had "two beers."

6

¶13. Viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to support the DUI conviction.

## II. Refusal to Submit to the Intoxilizer 8000 Considered as Evidence

¶14. Nolan next argues the trial court improperly considered his refusal to submit to the Intoxilyzer 8000 as evidence of intoxication. He argues that because the State failed to prove intoxication, his refusal to submit to the Intoxilyzer was irrelevant.

¶15. Nolan's refusal to submit to the breath test was properly admitted into evidence. "If a person under arrest refuses to submit to a chemical test under the provisions of this chapter, evidence of refusal shall be admissible in any criminal action under this chapter." Miss. Code Ann. § 63-11-41 (Rev. 2013). Further, our supreme court has held that "Mississippi Rule of Evidence 402 also provides for the introduction of a refusal to submit to a chemical test as it is relevant and not otherwise constitutionally inadmissible." *Starkey v. State*, 941 So. 2d 899, 901 (¶5) (Miss. Ct. App. 2006) (citing *Ricks v. State*, 611 So. 2d 212, 215-16 (Miss. 1992)).

¶16. Having found the State presented sufficient evidence of intoxication, we cannot find the judge erred in admitting Nolan's refusal to submit to the Intoxilyzer 8000 into evidence. This issue is without merit.

## III. Reasonable Suspicion and Probable Cause

¶17. Determinations of probable cause and reasonable suspicion are reviewed de novo. *Cook v. State*, 159 So. 3d 534, 537 (¶6) (Miss. 2015). "But the de novo review is limited to the trial court's 'decision based on historical facts reviewed under the substantial evidence

7

and clearly erroneous standards.'" *Id.* (quoting *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006)).

¶18.    An investigative stop is permissible "as long as an officer has 'reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a felony or as long as the officers have some objective manifestation that the person stopped is, or is about to be engaged in criminal activity.'" *Dies*, 926 So. 2d at 918 (¶22) (quoting *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114 (¶16) (Miss. 1999)). "[I]f it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no 'objective basis' for the stop, and the stop is illegal." *Moore v. State*, 986 So. 2d 928, 933 (¶14) (Miss. 2008) (quoting *Walker v. State*, 913 So. 2d 198, 226 (¶91) (Miss. 2005)).

¶19.    Officer Ainsworth testified that he conducted the traffic stop because Nolan was tailgating the vehicle in front of him. Section 63-3-619, which prohibits tailgating, states: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

¶20.    Officer Ainsworth articulated that his attention was drawn toward Nolan's vehicle because it was "following an unknown motorist at an unsafe distance." The lead vehicle turned onto Old Canton Road, and Nolan's vehicle "continue[d] to follow at an unsafe distance behind the motorist." When asked how close the vehicles were together, Officer Ainsworth testified, "I just remember it being an unsafe distance . . . [,] [w]ithin a car length.

8

He was pretty close." He later described the distance as "extremely close." He was then asked what he deemed to be an unsafe distance, to which he responded: "I don't believe that he would be able to stop appropriately to avoid a collision if the subject in front of him immediately slammed on his brakes[.]"

¶21. In *Barrow v. State*, 121 So. 3d 935, 936 (¶1) (Miss. Ct. App. 2013), Barrow was convicted of tailgating. In upholding the conviction, we considered that the officer "made it clear from the start that Barrow's following the [vehicle in front of him] so closely was what drew his attention to Barrow." *Id.* at 938 (¶9). We found the officer's testimony sufficient evidence of guilt. *Id.* We likewise find the officer's testimony here sufficient to support the tailgating charge and sufficient to establish probable cause for the traffic stop. Officer Ainsworth was able to articulate an objective basis for the traffic stop under section 63-3-619—that Nolan's vehicle was following "another vehicle more closely than is reasonable and prudent"—thus making the traffic stop legal.

¶22. Despite now arguing there was no reasonable suspicion or probable cause for the traffic stop, we note that Nolan admitted during trial he was following closely to the car in front of him. Nolan testified he had been out drinking with business associates, and he was following them to his hotel. He testified he was unfamiliar with the area, and he was following closely so as not to lose track of the vehicle in front of him.

¶23. Given Officer Ainsworth's testimony, as well as Nolan's, we find reasonable suspicion and probable cause existed for the traffic stop.

IV. **Weight of the Evidence of DUI and Tailgating**

¶24. "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). The evidence is viewed in the light most favorable to the verdict. *Id.* A new trial should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.*

¶25. Nolan argues the convictions were against the weight of the evidence. He argues the tailgating conviction was against the weight of the evidence because Officer Ainsworth testified inconsistently as to Nolan's speed—first stating Nolan was traveling approximately forty miles per hour, then stating he was traveling approximately thirty miles per hour. And he argues the DUI conviction was against the weight of the evidence because he was "calm, cooperative, and without balance issues," other than the balance issues demonstrated during the field sobriety tests, throughout the traffic stop and arrest.

¶26. Viewing the evidence in the light most favorable to the verdict, we find no merit to these arguments. Officer Ainsworth's attention was drawn to Nolan's vehicle because it was following at an unsafely close distance to the vehicle in front of it. Nolan admitted to following the vehicle closely, as the driver in front of him was guiding him to his hotel, and he did not want to get separated from the vehicle. Nolan inadequately performed the field sobriety tests, smelled of alcohol, admitted he had drunk earlier that night, and had glassy, bloodshot eyes. The fact that he was calm and cooperative and did not exhibit balance issues other than during the field sobriety tests does not negate a finding of intoxication. The convictions are not contrary to the weight of the evidence.

10

## V. Constitutionality of Section 63-3-619(1)

¶27. Finally, Nolan argues the trial court erred in upholding the traffic stop and finding him guilty of tailgating because Mississippi's tailgating statute is unconstitutionally vague.

¶28. Nolan did not challenge the constitutionality of the statute at trial. "The general rule is that [an appellate court] will not address issues raised for the first time on appeal, particularly where constitutional questions are concerned." *5K Farms Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 224 (¶12) (Miss. 2012). However, an "obvious error which was not properly raised by the defendant and which affects a defendant's fundamental, substantive right" can be addressed under the plain-error doctrine. *Burdette v. State*, 110 So. 3d 296, 303 (¶23) (Miss. 2013). "[A] conviction under an unconstitutionally vague statute violates the Due Process Clause," and is "an error affecting a fundamental constitutional right." *Fulgham v. State*, 47 So. 3d 698, 700 (¶6) (Miss. 2010). Thus, we will address this issue.

¶29. The challenged statute provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Miss. Code Ann. § 63-3-619(1).

¶30. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Fulgham*, 47 So. 3d at 701 (¶8) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). "[T]he test is whether the language conveys [a] sufficiently definite warning

11

as to the proscribed conduct when measured by common understanding and practices." *Id.* (quoting *Kolender*, 461 U.S. at 357). The challenging party must prove the statute's unconstitutionality beyond a reasonable doubt. *Crook v. City of Madison*, 168 So. 3d 930, 935 (¶14) (Miss. 2015). Statutes are given a strong presumption of validity, and all doubts must be resolved in favor of the statute. *Id.*

¶31. In addressing a void-for-vagueness argument, our supreme court has held that the following factors must be considered:

> 1. The court must consider whether the statute affects a constitutional right.
>
> 2. If the statute implicates no constitutionally protected right, the court should consider whether the statute is impermissibly vague in all of its applications, applying the statute to the complainant's conduct before considering any hypothetical scenarios. In applying the statute to the facts at hand, the court must consider whether the complainant had notice of what conduct is prohibited and whether law enforcement had definite standards to avoid arbitrary enforcement.

*Fulgham*, 47 So. 3d at 702 (¶13) (internal citations omitted). The statute here does not implicate a constitutionally protected right; thus, we must examine whether the statute is impermissibly vague in all its applications, first considering the statute as applied to Nolan's conduct.

¶32. Nolan argues the statute's vagueness was evidenced by Officer Ainsworth's struggle to define its meaning adequately, and his use of a subjective standard—that is, what he defined as an unsafely close distance—in conducting the traffic stop. Nolan also points out that the trial court noted that the statute "does not give much guidance."

¶33. While our supreme court has not addressed the constitutionality of section 63-3-

619(1), multiple other jurisdictions have upheld identical statutes as constitutional. In *United States v. Hunter*, 663 F.3d 1136, 1142 (10th Cir. 2011), the appellant argued that Kansas's tailgating statute, which is identical to Mississippi's, is unconstitutionally vague because the "reasonable and prudent" language is subjective. The United States Court of Appeals for the Tenth Circuit rejected this argument, holding:

> [I]mprecision in statutes such as the one here simply build[s] in needed flexibility while incorporating a comprehensible, normative standard easily understood by the ordinary driver, and giving fair warning as to what conduct on his or her part is prohibited. Further, references in these statutes to considerations such as speed, traffic and road conditions, channel enforcement.

*Id.* In reaching its decision, the Tenth Circuit cited a case from the Court of Criminal Appeals of Tennessee, *State v. Harton*, 108 S.W.3d 253, 260 (Tenn. Crim. App. 2002), which held that Tennessee's tailgating statute, which, again, is identical to Mississippi's, "provides fair warning of prohibitive conduct and provides sufficient guidance to prevent arbitrary and discriminatory enforcement . . . [and] is neither unconstitutionally vague nor overbroad." *See Hunter*, 663 F.3d at 1142 & n.2 (citing *Harton*, 108 S.W.3d at 259-60).

¶34. The following jurisdictions have also upheld identical or substantively similar tailgating statutes containing the "reasonable and prudent" standard: *United States v. Mendez–Cejas*, No. 2:08-cr-00024-JCM-GWF, 2009 WL 914873, at *4 (D. Nev. Jan. 15, 2009) (finding probable cause existed for the traffic stop because "people of ordinary intelligence would understand that following another vehicle within the distance and at the speed Defendant's vehicle was traveling is not reasonable and prudent"); *United States v. Marmolejo*, No. 3:04-cr-132, 2007 WL 915195, at *2 (S.D. Ohio 2007) (finding the statute

13

"define[s] the offense with sufficient definiteness that ordinary people can understand [the] prohibited conduct"); *United States v. Johnson*, No. 5:04CR65-1-V, 2006 WL 435975, at *4 (W.D.N.C. Feb. 21, 2006) (holding the "statute's failure to specify an exact 'safe' distance does not render [it] unconstitutionally vague"); *State v. Giovengo*, 692 So. 2d 462, 463 (La. Ct. App. 1997) ("[T]he language of the statute, given a generally accepted meaning and read in pari materia, would indicate that a following car should leave enough room in case the car in front stopped suddenly."); *Logan City v. Carlsen*, 585 P.2d 449, 450 (Utah 1978) (holding "that the ordinance is not unconstitutionally vague and that it adequately informs the operators of motor vehicles of the kind of conduct that is forbidden"); *Smith v. State*, 237 So. 2d 139, 140 (Fla. 1970) (holding "it is clear that 'men of common intelligence' would know [the statute's] meaning and would not be required to guess as to its application"); *State v. Heid*, 270 N.Y.S.2d 474, 476 (N.Y. Cty. Ct. 1966) (finding "the instant statute is not too vague or indefinite and is therefore not unconstitutional").

¶35.    In *Leuer v. City of Flowood*, 744 So. 2d 266, 270 (¶14) (Miss. 1999), a vagueness challenge similar to the one raised here was made to Mississippi's careless-driving statute. *See* Miss. Code Ann. § 63-3-1213 (Rev. 2013) ("Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving."). The appellant argued "that the phrase 'careless or imprudent manner' is vague and subjective and provides no objective criteria by which an individual is put on notice of what conduct the statute proscribes." *Leuer*, 744 So. 2d at 270 (¶14). Looking at the plain

14

language of the statute, along with cases from other jurisdictions upholding similar statutes, the supreme court found that "[w]hen our careless[-]driving statute is coupled with the rules of the road, there is specificity sufficient to withstand constitutional scrutiny." *Id.* (internal citation omitted).

¶36. We find the same is true here regarding the tailgating statute. Applying the statute to the facts of this case, Officer Ainsworth testified that Nolan was following the vehicle in front of him more closely than was reasonable and prudent because Nolan would not have been able to stop had the vehicle in front of him slammed on brakes. It is clear that a driver should leave enough distance between him and the car in front of him such that the cars would not collide if the first slammed on brakes. In determining what is a safe distance, the statute gives certain factors to consider, such as the speed of the vehicles, the traffic, and the condition of the road.

¶37. We cannot find that section 63-3-619(1) is impermissibly vague or fails to give a driver notice of the prohibited conduct. The statute, coupled with the rules of the road, is sufficiently definite such that an ordinary person can understand the prohibited conduct and that law enforcement can avoid arbitrary enforcement. We find the statute sufficiently specific to pass constitutional scrutiny. This issue is without merit.

¶38. **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, FINE OF $900, AND SENTENCE OF FORTY-EIGHT HOURS IN THE CUSTODY OF THE MADISON COUNTY SHERIFF'S DEPARTMENT, WITH THE SENTENCE SUSPENDED UPON THE CONDITION THAT APPELLANT COMPLETE THE MISSISSIPPI ALCOHOL SAFETY EDUCATION PROGRAM, OR THE EQUIVALENT IN APPELLANT'S PLACE OF RESIDENCE IN ONTARIO, CANADA, AND TWO YEARS OF UNSUPERVISED PROBATION; AND**

15

**CONVICTION OF FOLLOWING TOO CLOSELY AND FINE OF $50 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**